**Affirmed and Memorandum Opinion filed June 4, 2026.**



In The

# Fifteenth Court of Appeals

### NO. 15-24-00041-CV

**TORO ROJO, INC. AND CASCO HAULING AND EXCAVATING CO.,**
**Appellants**

**V.**

**KELLY HANCOCK , COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS; AND KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, Appellees**

**On Appeal from the 201st District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-13-002427**

## MEMORANDUM OPINION

Toro Rojo, Inc. (Toro Rojo) and Casco Hauling and Excavating Co. (Casco) (or, collectively, the Taxpayers) appeal a final judgment in favor of Kelly Hancock, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas, (collectively, the Comptroller Parties).[1]

---

[1] Glenn Hegar, in his official capacity as Comptroller of Public Accounts of the State of

*See* Tex. Tax. Code §§ 112.051–.060.  The Taxpayers brought suit under Chapter 112 of the Tax Code to recover franchise taxes paid under protest for report years 2008 and 2009.  The Taxpayers also requested declaratory relief under the Uniform Declaratory Judgments Act (UDJA).  *See* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011.  Specifically, the Taxpayers sought a declaration that they are generally entitled to deduct the cost of goods sold in calculating their franchise-tax liabilities, not just for report years 2008 and 2009.

Following a jury trial, the district court rendered judgment that the Taxpayers take nothing on their claims to recover their protest payment.  In addition, the district court denied their request for declaratory relief.  We affirm the district court's judgment.

## BACKGROUND

*Texas Franchise Tax*

Texas imposes a franchise tax on each taxable entity that does business in this State or that is chartered or organized in this State.[2]  *See* Tex. Tax Code § 171.001(a).  To pay the franchise tax, a taxable entity must file an annual franchise-tax report with the Comptroller containing the financial information necessary to calculate its franchise-tax liability.  *Id.* § 171.202(a).  That calculation begins by determining the taxable entity's "total revenue," which is generally derived from amounts reportable as income on the entity's federal tax return.  *See id.* § 171.1011 (calculation of total revenue); *see also Graphic Packaging Corp. v.*

---

Texas, was originally a named defendant in this suit.  Because Hegar was succeeded by Kelly Hancock, Acting Comptroller of Public Accounts, during the pendency of this case, Hancock has been automatically substituted as a party in this appeal.  *See* Tex. R. App. P. 7.2(a)

[2] Unless otherwise noted, all references and citations to Chapter 171 in this opinion are to the version in effect for the report years at issue in this case.

*Hegar*, 538 S.W.3d 89, 93 (Tex. 2017). Next, the taxable entity's "margin" is computed by subtracting from the total revenue any deductions allowed under Chapter 171 of the Tax Code.[3] Tex. Tax Code § 171.101(a)(1). One deduction from total revenue that a taxable entity may take to compute its margin is the cost-of-goods-sold (COGS) deduction. *Id.* §§ 171.101(a)(1)(B)(ii), .1012. Relevant here, under subsection (i) of Section 171.1012, a taxable entity that "furnish[es] labor or materials to a project for the . . . improvement . . . of real property is considered to be an owner of that labor or materials and may include the costs" in computing its COGS deduction. *Id.* § 171.1012(i). Finally, the entity's "taxable margin"—to which the statutorily set franchise tax rate applies—is computed by apportioning the entity's margin to its business done in Texas. *Id.* §§ 171.101(a)(2), .106; *In re Nestle USA, Inc.*, 387 S.W.3d 610, 615 (Tex. 2012) (explaining that "taxable margin" is entity's margin multiplied by percentage of gross receipts earned from business in Texas). For the 2008 and 2009 report years, the standard franchise tax rate was 1.0%, but certain entities that primarily engage in wholesale or retail trade applied a tax rate of 0.5%. Tex. Tax Code § 171.002(a), (b).

Alternatively, if a taxable entity's total revenue is under a certain threshold, it may elect to calculate its franchise-tax liability by applying the E-Z computation.[4] *See id.* § 171.1016 ("E-Z Computation and Rate"). Under the E-Z Computation, an entity's tax liability is not calculated using its taxable margin, and

---

[3] More specifically, in tax years 2008 and 2009, the taxable margin was computed as the lesser of: (1) "70 percent of the taxable entity's total revenue," or (2) the taxable entity's total revenue minus, at the entity's election, "cost of goods sold as determined under Section 171.1012," or "compensation, as determined under Section 171.1013." Tex Tax Code § 171.101(a)(1).

[4] For the 2008 and 2009 tax years, a taxable entity could elect to use the E-Z Computation if its total revenue from if its entire business was not more than $10 million. *See id.* § 171.1016(a).

thus no deductions are taken from total revenue. Instead, the entity's tax liability is calculated by applying a lower tax rate to the entity's total revenue, subject only to apportionment. *See id*. § 171.1016(b). During the 2008 and 2009 report years, the tax rate under the E-Z Computation was 0.575%. *Id*. § 171.1016(b)(3).

*Franchise-Tax Dispute*

Toro Rojo is a transportation company that hauls demolition and construction waste to dispose in landfills. Casco, a subsidiary of Toro Rojo's parent company, operates a landfill for demolition and construction waste. In 2010, the Comptroller initiated an audit of the Taxpayers' individual franchise-tax returns for report years 2008 and 2009.[5] On their 2008 and 2009 franchise-tax reports, the Taxpayers calculated their franchise-tax liabilities using the COGS deduction to reduce their taxable margins. In contrast, the auditor concluded that the COGS deduction did not apply and, instead, applied the E-Z Computation to calculate the Taxpayers' franchise-tax liabilities. At the conclusion of the audit, the Comptroller determined that the Taxpayers owed additional franchise taxes for tax years 2008 and 2009.[6]

In July 2013, the Taxpayers paid the assessed additional franchise tax ($30,885.33) under protest and filed a tax-protest suit against the Comptroller

---

[5] Because the Taxpayers are affiliated entities, the auditor subsequently combined the tax returns under a single franchise tax return.

[6] The Taxpayers requested a redetermination of the Comptroller's assessment before the State Office of Administrative Hearings. *See id.* §§ 111.009(c), .00455. Following competing motions for summary disposition, *see* 1 Tex. Admin. Code § 155.505 (State Office of Admin. Hearings, Summary Disposition), the administrative law judge issued a proposal for decision (PFD), concluding that the Taxpayers were not entitled to the COGS deduction and that, consequently, they owed the additional taxes as computed by the auditor. The Comptroller subsequently issued an order, approving and adopting the PFD.

Parties in district court to recover the payment. *See id.* § 112.051. In April 2022, they amended their petition to add a claim for declaratory relief under the UDJA. *See* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011. Specifically, the Taxpayers sought declarations that the "removal and disposal of construction and demolition waste is an improvement of real property" and that, as a result, "the [Comptroller] must allow [the Taxpayers] to take the [COGS] deduction in computing [their] franchise tax liability." In addition, the Taxpayers sought to recover their attorney's fees under the UDJA. *See id.* § 37.009 (authorizing court to award reasonable and necessary attorney's fees).

In October 2023, the case proceeded to a jury trial. At the conclusion of trial, the jury found: (1) in 2008 and 2009, the Taxpayers had "furnish[ed] labor to a project for the construction or improvements of real property of another person or entity"; (2) the total amounts of costs of goods sold incurred by Toro Rojo, as "supported by contemporaneous records" for tax years 2008 and 2009, were $918,778 and $954,286, respectively; and (3) the total amounts of costs of goods sold incurred by Casco, as "supported by contemporaneous records" for tax years 2008 and 2009, were $0. Based on the jury's findings, the district court rendered judgment that the Taxpayers take nothing on their refund claims against the Comptroller Parties. In effect, the district court concluded that in applying the COGS deduction for report years 2008 and 2009, in the amounts found by the jury, the resulting franchise-tax liability was as much or more than the amount the Taxpayers had already paid, including the amount they had paid under protest. In addition, the district court denied the Taxpayers' UDJA claim, including their claim for attorney's fees. This appeal followed.

## DISCUSSION

In their first and second issues on appeal, the Taxpayers assert that the district court erred "by refusing to grant a declaratory judgment holding that [they] were eligible to elect a COGS deduction for revenue generated by improving real property as required by Tax Code, [Section] 171.1012(i)." The Taxpayers contend that the district court erred by refusing to declare that not only can they take a COGS deduction in calculating their franchise-tax liabilities for the tax years that are the subject of their protest suit (2008 and 2009), but also that they can take a COGS deduction for every report year, including for any future tax assessments. They also contend that the district court erred in failing to submit their requested jury questions on this issue, to the extent additional jury findings were necessary. In response, the Comptroller Parties assert that the district court did not err in refusing to grant the requested declaratory relief because the claim is barred by sovereign immunity.

Sovereign immunity protects the State and its agencies from lawsuits unless the State, through its legislature, expressly consents to the suit. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 853 (Tex. 2002). The UDJA does not operate as a general waiver of immunity but, rather, is "merely a procedural device for deciding cases within a court's jurisdiction." *Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). Although the Texas Supreme Court has recognized that the UDJA does operate as a limited waiver of immunity as to certain claims, it does not confer a broad right to sue the government to obtain statutory construction or a declaration of rights. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (explaining that UDJA "does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law"). Here, there is no dispute that the Taxpayers' request for declaratory relief falls outside the scope of

the UDJA's limited waiver of immunity.[7]

Instead, the Taxpayers assert that the district court erred in refusing to grant declaratory relief because their claim is based on *ultra vires* conduct, a recognized exception to sovereign immunity, and because their requested declaration is aimed at preventing this conduct in the future. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (describing *ultra vires* exception to immunity). Even in the absence of a waiver of immunity, a "claim may proceed against a government official in his official capacity if the plaintiff successfully alleges that the official is engaging in *ultra vires* conduct." *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019); *see Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 157-58 (Tex. 2016). *Ultra vires* acts are acts that are beyond the statutory authority granted to state officials. *Heinrich*, 284 S.W.3d at 371–72. Properly pleaded *ultra vires* suits do not implicate sovereign immunity because they "do not seek to alter government policy but rather to enforce existing policy." *Id.* at 372. Consequently, *ultra vires* claimants are limited to prospective declaratory or injunctive relief restraining the *ultra vires* conduct. *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018).

To fall within the *ultra vires* exception to immunity, "a suit must not complain of a government officer's exercise of discretion"; instead, the plaintiff "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Houston Belt*, 487 S.W.3d at 161 (quoting *Heinrich*, 284 S.W.3d at 372). In this context, ministerial acts are those

[7] The Texas Supreme Court has recognized that the UDJA waives immunity for claims challenging the validity of ordinances or statutes, *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634-35 (Tex. 2010), but the Taxpayers are not challenging the validity of Section 171.1012(i) of the Tax Code. Rather, they are challenging the Comptroller's determination that their business operations do not fall within the scope of Section 171.012(i).

"where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2016). In contrast, an act "without legal authority" has two fundamental components: (1) "authority giving the official some (but not absolute) discretion to act and (2) "conduct outside of that authority." *Id.* at 239. A government official acts without legal authority, and thus *ultra vires,* if he or she exceeds the bounds of the granted authority or if his or her acts conflict with the law itself. *Houston Belt*, 487 S.W.3d at 158. "[W]hether a suit attacking an exercise of limited discretion will be barred is dependent upon the grant of authority at issue in any particular case. *Id.* at 164. "And so many legislative grants of authority, although not absolute, will be broad enough to bar most, if not all, allegedly *ultra vires* claims." *Id.*

The Taxpayers argue that the Comptroller engaged in conduct outside the scope of his statutory authority, and thus acted *ultra vires*, by denying their statutory right to elect the COGS deduction in calculating their franchise-tax liability. In response, the Comptroller Parties argue that the Taxpayers' *ultra vires* claim is invalid because it ultimately relates to the Comptroller's examination and determination of the Taxpayers' franchise-tax liability and that these are matters within the Comptroller's discretion and authority under the Tax Code. Based on the authority statutorily granted to the Comptroller, we agree with the Comptroller Parties.

The Legislature has given the Comptroller broad authority to assess and collect taxes and to "adopt regulations" that he or she considers necessary in carrying out these functions. *See* Tex. Gov't Code § 403.011 (outlining Comptroller's general powers); *see* Tex. Tax Code § 111.002(a) (authorizing Comptroller to adopt rules pertaining to collection of taxes). In addition, the

8

Comptroller is statutorily authorized to review tax reports and "any other information available to the Comptroller," compute the amount of taxes owed, *see id.* § 111.008(a), and, if necessary, to assess penalties on delinquent taxes or tax reports, *see id.* § 111.061. The Comptroller's broad authority to assess and collect taxes includes discretion as to how to carry out these statutorily-mandated duties. *See 13335 Duluth Rest. & Bar, L.L.C. v. Hegar*, No. 14-20-00098-CV, 2021 WL 4314468, at *5 (Tex. App.—Houston [14th Dist.] Sept. 23, 2021, no pet.) (mem. op); *Office of the Comptroller of Pub. Accounts v. Paske, Inc.*, No. 03-16-00121-CV, 2017 WL 4583213, at *5 (Tex. App.—Austin Oct. 10, 2017, no pet.) (mem. op.). That discretion extends to the Comptroller's authority to compute franchise taxes and to determine, in certain cases, whether a taxable entity is entitled to a COGS deduction in calculating its franchise taxes. *See* Tex. Tax Code §§ 171.101, .1012.

The Texas Supreme Court has recognized that when a governmental entity is given broad authority under a given statutory scheme, it will be given some leeway in interpreting and applying the statute, absent a "conspicuous and irreconcilable conflict." *Klumb v. Houston Mun. Emp. Pensions Sys.*, 458 S.W.3d 1, 11 (Tex. 2015) (dismissing *ultra vires* claims and concluding pension board had broad authority to construe the statute and to add language necessary for administration of pension fund); *see also Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 73 (Tex. 2018) (discussing *Klumb*). In addition, "'[u]ltra vires claims depend on the scope of the state official's authority,' not the quality of the official's decisions." *Honors Acad.*, 555 S.W.3d at 68 (quoting *Hall*, 508 S.W.3d at 234). "[I]t is not an ultra vires act for an official to make an erroneous decision within the authority granted." *Id*.

When a taxpayer disagrees with the Comptroller's determination that its tax

report is deficient, such that additional taxes are owed, the taxpayer may request an administrative determination or file a tax-protest suit under Chapter 112 of the Tax Code, just as the Taxpayers did in this case. *See* Tex. Tax Code §§ 111.009, 112.052. But just because a taxpayer disagrees with the Comptroller's assessment of its franchise-tax liability does not mean that the Comptroller acted beyond the scope of his statutory authority, even if the assessment is in error. Consequently, the allegations and evidence in this case fail to demonstrate a valid *ultra vires* claim that would entitle the Taxpayers to declaratory relief. We overrule the Taxpayers' first and second issues. [8]

In their third and fourth issues on appeal, the Taxpayers argue that the district court erred in allowing the Comptroller Parties to challenge the amount of their claimed COGS deduction. In short, the Taxpayers complain that in the administrative proceedings, the Comptroller's determination that they owed additional franchise tax was based solely on his conclusion that they did not qualify for the COGS in tax years 2008 and 2009. The Taxpayers point out that in these administrative proceedings, the Comptroller Parties never asserted, even in the alternative, that the amount of the COGS deduction claimed was incorrectly calculated.[9] Thus, in the view of the Taxpayers, the district court was

---

[8] In their appellate briefing, the parties join issue as to whether former Section 112.108 of the Tax Code applies to this suit. That provision, repealed in 2021, stated that "a court may not issue a . . . declaratory judgment . . . against the state or a state agency relating to the applicability, assessment, collection, or constitutionality of a tax or fee." Former Tex. Tax. Code § 112.108; *see EBS Solutions, Inc. v. Hegar*, 601 S.W.3d 744, 750 (Tex. 2020) (concluding in as-applied challenge that former Section 112.108 did not violate open-courts provision of Texas Constitution). The legislation repealing Section 112.108 applies to suits disputing the amount of tax, penalty, or interest that becomes due and payable on or after September 1, 2021. *See* Act of May 24, 2021, 87th Leg., R.S., ch. 331, §§ 11-13, 2021 Tex. Gen. Laws 681, 684. Because we conclude that the Taxpayers' claim for declaratory relief does not present a viable *ultra vires* claim, we need not decide whether it is also barred by former Section 112.108.

[9] Specifically, in their third issue, the Taxpayers argue that the district court lacked jurisdiction to consider the "validity of the amounts [] claimed as COGS deductions for 2008 and

10

jurisdictionally and constitutionally barred from considering the Comptroller Parties' argument as to the amount of the claimed COGS deduction in the tax-protest suit.

The Taxpayers' arguments concerning the amount of the COGS deduction are based on an incorrect assumption about the burden of proof in tax-protest suits. The issues to be determined in a tax-protest suit "are limited to those arising from the reasons expressed in the [plaintiff's] written protest as originally filed," *id.* § 112.053(b), and the case is presented de novo in the district court, *id.* § 112.054. As a result, the burden is on the plaintiff in the protest suit to prove by a preponderance of the evidence that it is entitled to a recover all or part of the tax paid under protest. *U.S. Concrete, Inc. v. Hegar*, 578 S.W.3d 559, 569 (Tex. App.—Austin 2019, pet. denied).

As applied here, the Taxpayers had the burden of proving not only that they were entitled to deduct COGS for their activities in 2008 and 2009—the reason for recovery expressed in their written protest—but also that, as a result, "all or part of the [$30,885.33] paid under protest was unlawfully demanded [by the Comptroller]." *See* Tex. Tax Code § 112.060(a). To meet this burden, the Taxpayers necessarily were required to "produce contemporaneous records and supporting documentation" showing that the amount of their COGS deduction would result in a lower tax liability than that calculated by the Comptroller. *See id.* § 112.052(d) (requiring taxpayer to "produce contemporaneous records and supporting documentation . . . to substantiate and enable verification of [the] taxpayer's claim relating to [among other things] the amount of the tax" to be

2009 when this issue was not ever raised or considered in the administrative proceedings [or] motion for rehearing." Similarly, in their fourth issue, the Taxpayers assert that the district court erred in denying their motion to dismiss the Comptroller Parties' challenge as to the amount of the COGS deduction because the Comptroller failed to provide notice that he intended to challenge the amount of the requested COGS deduction claim.

refunded). In sum, what the Taxpayers characterize as a "defense" raised by the Comptroller Parties is, in actuality, an issue on which the Taxpayers had the burden of proof in their protest suit.[10]

Based on the jury's findings, the Taxpayers met their burden to show they were entitled to the COGS deduction for tax years 2008 and 2009, but failed to meet their burden to show, based on the amount of their COGs deduction, that they were entitled to recover some or all of their protest payment. We overrule the Taxpayers' third and fourth issues on appeal.

## CONCLUSION

Having overruled all of the appellants' issues on appeal, we affirm the district court's judgment.


/s/ Scott K. Field
Scott K. Field
Justice


Before Chief Justice Brister and Justices Field and Farris.

---

[10] While it is possible for the Comptroller to stipulate as to the amount of a claimed COGS deduction in tax-protest suit, such that the only issue in the suit is whether the taxpayer is entitled to take the deduction, the Taxpayers do not contend, and the record does not show, that the Comptroller made such a stipulation in this case.